WISCONSIN DEPARTMENT OF CORRECTIONS, Plaintiff-Appellant,

v.

Robert B. KLIESMET, Sheriff of Milwaukee County and Milwaukee County, Defendants-Respondents.

Supreme Court

*No. 96–2292. Oral argument May 29, 1997.—Decided June 25, 1997.*

(Also reported in 564 N.W.2d 742.)

For the plaintiff-appellant the cause was argued by *Robert D. Repasky*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendants-respondents there was a brief by *John R. Decker* and *Decker & Gunta, S.C.*, Milwaukee, and *Robert G. Ott*, Corporation Counsel, Milwaukee, and oral argument by *John R. Decker*.

¶ 1. ANN WALSH BRADLEY, J. The court of appeals, by certification, asks us to review an order of the circuit court[1] vacating a permanent injunction against the Sheriff of Milwaukee County (Sheriff). The issue presented is whether the Wisconsin Department of Corrections (DOC) can place its detainees in a county jail over the safety objection of the sheriff. The DOC asserts that it is statutorily authorized to place its detainees in the Milwaukee County Jail (Jail) and that the Sheriff cannot refuse such placement. Because we conclude that this authority of the DOC is limited by the Sheriff's duty and authority to preserve the safety of the Jail, we affirm the order of the circuit court. In addition, in order to allow sufficient time for our legislature to consider and allocate the cost of locally

---

[1] Circuit Court for Milwaukee County, John E. McCormick, Judge.

incarcerating DOC detainees, we delay for one year the effect of today's decision.

¶ 2. At its core, this case presents a question of statutory interpretation. Wisconsin Stat. § 302.31 (1995–96)[2] provides in relevant part:

> **Use of jails**. The county jail may be used. . .for the temporary detention of persons in the custody of the department.[3]

The authority under this section to detain alleged violators of probation or parole in the Milwaukee County Jail first became the subject of litigation over 20 years ago.

¶ 3. In 1975, Sheriff Michael S. Wolke announced that pursuant to his constitutional and statutory role as custodian of the Milwaukee County Jail, alleged violators of probation or parole in the custody of the Department of Health and Social Services (DHSS) would no longer be detained in the Jail for periods exceeding five days.[4] According to the Sheriff, this action was necessitated by the dangerous overcrowding situation then prevailing at the Jail. The DHSS commenced a declaratory judgment action in the Circuit Court for Dane County, which issued a temporary

---

[2] Unless otherwise indicated, all future references are to the 1995–96 volume.

[3] The "department" referred to is the Department of Corrections. *See* Wis. Stat. § 301.01(1). Section 302.31 is the statutory successor to Wis. Stat. § 53.31. For purposes of our inquiry, the language at issue is identical in both versions of the statute, and the statute will be cited throughout the opinion as "§ 302.31. "

[4] The Department of Corrections has since succeeded the Department of Health and Social Services in the administration of the probation and parole programs.

injunction requiring the Sheriff to continue housing alleged violators of probation or parole.

¶ 4. In 1980, after a change in venue, the Circuit Court for Milwaukee County dissolved the temporary injunction. The court of appeals summarily reversed, reinstated the temporary injunction, and remanded to the circuit court for construction of the statutory phrase "temporary detention." *See* § 302.31.

¶ 5. After several years of inactivity, the circuit court again addressed the case in 1987. In its decision and order, the circuit court concluded that the detentions for alleged violation of probation or parole were "temporary," and that the Sheriff was therefore obligated to keep the detainees pursuant to § 302.31. On that basis, the court permanently enjoined the Sheriff from refusing to keep DOC detainees for longer than five days.

¶ 6. The permanent injunction stood unchallenged until 1995, when the circuit court denied the Sheriff's Wis. Stat. § 806.07(1)(g)[5] motion to vacate the 1987 permanent injunction. The circuit court reasoned that the Sheriff failed to demonstrate a change in law or circumstances which would justify lifting the injunction.[6] The Sheriff appealed, and the court of appeals reversed and remanded, determining that the passage

---

[5] Section 806.07 provides in relevant part:

**Relief from judgment or order.** (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons...

(g) It is no longer equitable that the judgment should have prospective application....

[6] At the time of the circuit court's ruling in 1995, Richard E. Artison held the office of Sheriff. Artison was succeeded by the named defendant, Sheriff Robert B. Kliesmet.

of time, among other things, warranted "a new and full airing of the facts underlying the controversy." *Wisconsin Dep't of Corrections v. Artison*, No. 95–1420, unpublished slip op. at 8 (Wis. Ct. App. Nov. 14, 1995).

¶ 7. On remand to the circuit court, the case was assigned to Judge John E. McCormick, who granted the Sheriff's motion for summary judgment, vacating the permanent injunction. The DOC appealed, and the court of appeals certified the following issues for our consideration:

> 1) Does § 302.31, Stats., which provides that a "county jail may be used for. . .the temporary detention of persons in the custody of the [Department of Corrections]" (DOC), give DOC sole discretion to determine if a county jail is to be used for the temporary detention of persons in its custody?

> 2) If so, are there nonetheless equitable principles grounded in a county sheriff's constitutional authority to control and maintain the jail that can override the authority afforded DOC by § 302.31, Stats.?

¶ 8. Our review of a circuit court's ruling on a motion for relief under § 806.07 is limited to whether the court erroneously exercised its discretion. *Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 624, 511 N.W.2d 868 (1994). The authority of the DOC to keep its detainees at the Jail presents a question of statutory interpretation, which we review *de novo. State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997). Finally, we review summary judgment rulings *de novo, Burkes v. Klauser*, 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994), using the same methodology as that used by the circuit court. *Grams v.*

*Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980); Wis. Stat. § 802.08(2).

¶ 9. A circuit court may grant relief from a judgment or order when "[i]t is no longer equitable that the judgment should have prospective application." § 806.07(1)(g). The DOC argues that there has not been a sufficient showing of changed circumstances justifying relief from the permanent injunction. According to the DOC, the present dangerous overcrowding at the Jail cannot support the Sheriff's § 806.07(1)(g) motion, because similar overcrowding existed at the time that the permanent injunction was issued. We disagree.

¶ 10. Section 806.07(1)(g) is the Wisconsin equivalent to Fed. R. Civ. P. 60(b)(5). Because the federal and state rules dealing with relief from judgments are analogous, we have relied in the past on federal case law as persuasive authority when interpreting § 806.07. *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 542, 363 N.W.2d 419 (1985). In surveying federal law, we find instructive the United States Supreme Court's decision in *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367 (1992).

¶ 11. The *Rufo* case arose from unconstitutional conditions prevailing in 1971 at the Suffolk County Jail in Massachusetts. As part of a consent decree, Suffolk County agreed to build a new jail facility with several hundred single-occupancy rooms. After inmate population increases outpaced projections, Suffolk County filed a Rule 60(b)(5) motion to modify the consent decree in order to allow double bunking of inmates.[7] The district court denied the motion, reasoning that

---

[7] Double bunking is the practice of placing an additional bed and inmate in a cell that was designed for one bed and one inmate.

the increased inmate population was neither a new nor an unforeseen problem.

¶ 12. The United States Supreme Court reversed and remanded. Initially, the Court concluded that while Rule 60(b)(5) is traditionally applied to injunctions, the rule also applies to consent decrees. Under Rule 60(b)(5), the party seeking modification of the underlying order "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. The court may consider granting a Rule 60(b)(5) motion "when changed factual circumstances make compliance [with the underlying order] substantially more onerous"; when the underlying order "proves to be unworkable due to unforeseen obstacles"; or when enforcement of the underlying order "would be detrimental to the public interest." *Id.* at 384.

¶ 13. We conclude that the present overcrowding situation at the Milwaukee County Jail constitutes a changed circumstance warranting renewed consideration of the permanent injunction. The present Jail was opened in 1993 and was completed at a cost in excess of $100 million. It was designed to provide 744 residential beds and 54 special use beds. A study conducted in 1994 concluded that double bunking would increase the Jail's capacity to a maximum of 1,032 inmates. Between 1993 and 1995 the average daily population of the Jail increased 42.5%, and the inmate population reached 1,448 in April 1996.[8]

---

[8] Under Wis. Stat. § 302.315, Milwaukee County Jail inmates may be held at the County House of Correction (HOC). The HOC has received extensive use in an effort to alleviate overcrowding at the Jail. However, the HOC lacks sufficient bed space to accommodate enough Jail inmates to reduce the Jail population to a safe level.

¶ 14. The overcrowding which currently exists at the Jail is substantially greater in degree than that existing when this suit was commenced over 20 years ago. In 1975, Sheriff Wolke stated that the Jail at that time had a maximum capacity of 380 persons, and that it "has been daily at capacity, or even in excess of capacity." The overcrowding in 1975 pales in comparison to that currently experienced at the Jail. Not only is the design capacity of the new Jail twice that of the old Jail, but the number of inmates currently housed at the Jail stands at nearly 200% of design capacity.[9] We conclude that the increase in the degree of overcrowding at the Jail constitutes a substantial change in circumstances, and that the circuit court was therefore justified in reexamining the 1987 permanent injunction.

■■■

¶ 15. We turn next to a consideration of the circuit court's determination that § 302.31 "provides no authority for DOC to compel the Sheriff to keep probation and parole detainees where such action contributes to dangerous overcrowding of the jail." Our sole purpose when interpreting a statute is to give effect to the legislature's intent. *Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). We first look to the language of the statute, and if the language is unambiguous, we need not look further. If the language of the statute is ambiguous, we will ascertain and carry out the legislature's intent by

---

[9] In May 1996, the average daily population of the Jail was 1,272. As of May 29, 1996, nearly 400 of the Jail's inmates were DOC detainees, with an additional 500 detained at the House of Correction. Approximately one-half of the 900 DOC detainees kept at Milwaukee County facilities did not have other criminal charges pending against them.

examining the history, context, subject matter, scope, and object of the statute. *Id.* at 220.

Statutory language is ambiguous if reasonable minds could differ as to its meaning. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995).

¶ 16. Section 302.31 provides that "[t]he county jail may be used. . .for the temporary detention of persons in the custody of the department." The use of the word "may" generally connotes a discretionary element. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 59, 531 N.W.2d 45 (1995); *Miller v. Smith*, 100 Wis. 2d 609, 616, 302 N.W.2d 468 (1981). Thus, it is apparent from § 302.31 that the legislature has granted one or more entities the discretion to keep DOC detainees at the Jail. However, the statute is utterly silent as to the identity of the party or parties empowered with the authority to keep DOC detainees at the Jail. Because one might reasonably infer from § 302.31 that either or both the DOC and the Sheriff could exercise the discretion granted in the statute, we conclude that the statute is ambiguous.

¶ 17. We disagree with the DOC's assertion that even if § 302.31 is ambiguous, Wis. Stat. §§ 302.33 and 302.335 demonstrate a legislative intent to grant the DOC alone the discretion to keep its detainees at the Jail. Section 302.33 requires the DOC to reimburse counties for the costs of maintaining its detainees at the county jail. This requirement provides little, if any, assistance in our effort to ascertain the meaning of § 302.31. The fact that the DOC must pay for keeping its detainees at the Jail does not mean that the DOC has an absolute right to demand such detention. Similarly, § 302.335 fails to illuminate our inquiry, as it

merely provides time limits on the detention of DOC detainees at the Jail.

¶ 18. Our reading of § 302.31, in conjunction with statutory and common law authority, leads us to determine that while the DOC may be vested with authority to temporarily keep its detainees in the county jails, that authority is not without bounds. Instead, the DOC's ability to keep its detainees at the Jail is limited by the well-established duty of sheriffs to vigilantly guard the safety of the jail.

¶ 19. The sheriff is under a statutory duty to "[t]ake the charge and custody of the jail maintained by the county and the persons in the jail, and keep the persons in the jail personally or by a deputy or jailer." Wis. Stat. § 59.27; *see also* Wis. Stat. § 302.37 (describing sheriff's duty to maintain jail and care for prisoners). As custodian of the jail, the sheriff is under a duty to safely keep and protect the prisoners in his charge. *See* Walter H. Anderson, 1 *A Treatise on the Law of Sheriffs Coroners and Constables* §§ 269–271 (1946).

¶ 20. The duty of sheriffs to maintain a safe jail was recognized at common law. Blackstone noted that the sheriff "may, and is bound *ex officio* to pursue and take all traitors, murderers, felons, and other misdoers, and commit them to gaol for *safe custody*." 1 William Blackstone, *Commentaries* *343 (emphasis added). The sheriff is ultimately responsible for safely keeping all persons committed to the jail. *Id.* at *346; *see also* A.E. Gwynne, *A Practical Treatise on the Law of Sheriff and Coroner* 539 (1849) ("It is the duty of the sheriff to take charge of all persons committed to jail, and see that they are safely kept and supplied with necessary sustenance, according to law. He must, at all

times, by himself or deputy, attend to the jail of the county, for these purposes").

¶ 21. Sheriffs have a duty to provide reasonable protection to jailed persons, and that duty extends to protection from others in custody. *Prosser and Keeton on the Law of Torts* § 132, at 1063 (5th ed. 1984). Furthermore, "[t]he majority of courts hold that the sheriff or other officer, owes a duty to the prisoner to keep him safely and to protect him from unnecessary harm and it has also been held that the officer must exercise reasonable and ordinary care for the life and health of the prisoner." Annotation, *Civil Liability of Sheriff or Other Officer Charged with Keeping Jail or Prison for Death or Injury of Prisoner*, 14 A.L.R.2d 353, 354 (1950). "Beyond statutory requirements a sheriff is bound to exercise in the control and management of the jail the degree of care requisite to the reasonably adequate protection of the prisoners or inmates." *O'Dell v. Goodsell*, 30 N.W.2d 906, 909 (Neb. 1948).

¶ 22. Overcrowded jails operate not only to the detriment of inmates, but also imperil the safety of deputies and jail staff. As the circuit court noted:

> The current overcrowding threatens the safety of inmates and deputies in a direct supervision environment in numerous ways: (1) it threatens the ability to evacuate inmates in a safe area in the event of a fire or other emergency; (2) it increases tension and hostility in what is already an anxious environment, which can lead to fights or assaults on deputies; (3) it frustrates the ability to classify inmates, e.g., to avoid placing rival gang members in the same dayroom, and to separate inmates if there are signs of trouble brewing, or to classify inmates based upon the severity of their offenses; (4) it prevents deputies from getting to know and

establishing a rapport with inmates, which, under the direct supervision method, is critical to maintaining order and avoiding trouble; (5) it increases the likelihood that a deputy might be attacked and overpowered; (6) it increases the likelihood that an inmate might be injured in a fight or that stronger inmates may otherwise prey upon weaker inmates; and (7) it causes a processing backlog, resulting in dangerous overcrowding in less secure areas of the jail.

¶ 23. We conclude that the legislature intended by § 302.31 to grant the DOC discretion to keep alleged violators of probation or parole in jails. However, considering the statutory and common law authority establishing a sheriff's duty and authority to act in the interest of jail safety, we also discern a legislative intent to limit the DOC authority under § 302.31 in those instances in which a sheriff determines that taking additional DOC detainees would result in such overcrowding as to constitute an unacceptable risk of harm to inmates, deputies, and jail staff.[10]

¶ 24. The DOC notes the several difficulties that it will encounter in administering its probation and parole functions if its authority to keep its detainees in the Jail is limited. This court is aware of the administrative difficulties that the DOC faces. However, in the

---

[10] Because we have determined from other sources that the legislature did not intend by § 302.31 to deprive sheriffs of the authority necessary to maintain a safe jail, we need not reach the issue whether the duty and authority to maintain a safe jail is of a constitutional dimension. *See Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 612, 407 N.W.2d 873 (1987); *Labor and Farm Party v. Elections Bd.*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984). Furthermore, today's decision is strictly limited to the Sheriff's authority to refuse to keep DOC detainees.

absence of a clear directive to the contrary, we will not conclude that the legislature intended that the DOC's authority to keep its detainees should trump the Sheriff's duty to maintain safety at the Jail.

¶ 25. We recognize that there will be costs associated with the provision of additional facilities for the detention of alleged violators of probation or parole. However, the allocation of those costs between the DOC and local governments is an issue reserved to the sound discretion of our legislature. We are also mindful of the constitutional requirement under *Morrissey v. Brewer*, 408 U.S. 471 (1972), that persons accused of parole violations be detained in proximity to the alleged violation area. However, the local detention mandated by *Morrissey* does nothing to further our inquiry into the DOC's statutory authority to keep its detainees in the County Jail over the safety objections of the Sheriff. Rather, it is a consideration that the legislature must take into account when determining the best means of housing DOC detainees.

¶ 26. Because of the need to give the legislature sufficient time to address the administrative difficulties that the DOC would face if it were unable to utilize the Jail to house its detainees, we delay the effective date of today's decision by one year. *See, e.g., Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962) (delaying for 40 days the effective date of this court's decision abrogating the doctrine of governmental tort immunity); *Pascucci v. Vagott*, 362 A.2d 566 (N.J. 1976) (delaying for 60 days the effective date of its decision invalidating a general assistance benefit schedule); *Hellerstein v. Assessor of Town of Islip*, 332 N.E.2d 279, 287 (N.Y. 1975) (delaying for 18 months the effective date of its decision invalidating real estate assessment technique); *Bond v. Burrows*, 690 P.2d

1168 (Wash. 1984) (delaying for 15 days the effective date of its decision invalidating a sales tax differential between counties).

¶ 27. In sum, the degree of the present overcrowding situation at the Milwaukee County Jail warrants a reconsideration of the permanent injunction requiring the Sheriff to keep DOC detainees. After considering the law and undisputed facts in this case, we conclude that the DOC has been granted the discretion under § 302.31 to keep its detainees in county jails. However, we also conclude that the legislature intended that the sheriffs, in their capacity as custodians of the jails, have the authority to refuse to keep DOC detainees when doing so would endanger jail safety. The circuit court therefore properly vacated the permanent injunction issued in 1987. Accordingly, we affirm.

*By the Court.*—The order of the circuit court is affirmed.